## Alexander R. Linn and another v. William E. Howell and another.

*Charge to the jury: Immaterial matters.* Instructions given in this case in response to an inquiry of the jury after they had retired for a time and returned into court again, are held to have been misleading and erroneous, in that they gave to a portion of the evidence on an immaterial matter a weight and influence to which it was not entitled.

*Fraudulent purchase: Immaterial questions.* In an action to charge defendants for the price of goods delivered to and disposed of by them, upon the ground that it was fraudulently contrived that the third person through whom the goods were obtained of plaintiffs should purchase them ostensibly for another firm, but secretly and really for the defendants, and that the purchase was so made, the right of recovery cannot

properly be made to turn upon directions given by defendants to such third person to abstain from making a purchase in their name on credit.

*Submitted on briefs April 14.     Decided April 20.*

Error to Cheboygan Circuit.

*Atkinson & Atkinson, W. S. Humphrey* and *G. W. Bell,* for plaintiffs in error.

*James J. Brown,* for defendants in error.

GRAVES, J:

Previous to 1873 Vorce, Barker & Co. were carrying on a lumber business at Cheboygan, and up to November of that year the firm had kept a small stock of goods near their mill to accommodate the persons in their service.

Mrs. Vorce is the wife of the member of the firm of that name, and Howell is her brother. Howell held a note against the firm for six hundred dollars, and in the spring of 1874 Mr. Vorce left Cheboygan for Buffalo, and it was arranged between him and defendants that he should endeavor to get the money called for by the note, of the partners of the firm in Buffalo, and should also obtain five hundred dollars of the father of Mrs. Vorce on mortgage of certain lands which Howell had deeded to her, and that with this money and the proceeds of the note he should during his return purchase a stock of goods for defendants.

He obtained the five hundred dollars, but failed to get any thing on the note. On reaching Detroit in the course of his return he bought goods of the plaintiffs to the amount of thirteen hundred dollars and paid over the five hundred dollars. At the same time he bought a bill of another house and the claim was assigned to plaintiffs. These purchases were made in the name of the old firm of Vorce, Barker & Co. and not in the name of the defendants; and they were upon credit except as to the amount of five hundred dollars which had been raised by mortgage of Mrs. Vorce's land. The two bills were shipped nominally

to the firm at Cheboygan, but on arrival there they were taken directly to the store of the defendants and thereafter disposed of precisely as though defendants owned them. Thereafter the defendants ordered goods from time to time as they desired them, but in so doing used the name of the old firm.     They also made payments in the same style.

There was evidence tending to show that Vorce's partners were not aware the firm name was being used in this way, and also that when the goods were bought the firm was embarrassed.     There was also evidence tending to show that the defendants were carrying on the business in their own name and without connection with the firm of Vorce, Barker & Co., and that Vorce was instructed to buy for cash only, and in case he did not get the six hundred dollars to make no purchases on credit.

There was evidence for defendants tending to show a special arrangement between them and Vorce for the supply and disposal of goods.

There was likewise evidence that the old firm had not dealt in merchandise later than the fall of 1873, and had not so dealt subsequent to the purchases in question, and that shortly after such purchases the old firm made an assignment for the benefit of creditors.

It is not important to refer to all the evidence.

After the first retirement of the jury they came back into court and inquired whether if Vorce was instructed by defendants to buy for cash, and he bought partly for cash and partly on credit, he thereby ceased to be their agent. And the judge replied that he would in such case cease to be their agent, if so being instructed by Howell, he purchased on credit in the name of the firm of Vorce, Barker & Co.; and that they, the jury, should consider all before them in reference to the question.

It appears to me the charge which had been given before the retirement of the jury was fair and distinct, and suited to the state of facts which the evidence seems to have disclosed.

But the answer given by the judge to the question stated

by the jury appears to me to have been liable to lead them to give weight and influence to a portion of the evidence to which it was not entitled, and to depart from the line of consideration which the principal charge had properly marked out.

The evidence tended to show that Vorce made the purchase in the name of the old firm and not in the name of the defendants, and hence not at all ostensibly as defendants' agent, and that the sellers of the goods were not aware that he was acting or assumed to act for the benefit of the defendants. The fact, if it was a fact, that he was secretly but actually buying for the defendants, and not for the firm, could have had no influence or imposed any duty upon the sellers at the time, because they had no knowledge of such a state of things. And as he was not acting ostensibly as defendants' agent, any condition which they had imposed upon his right to buy for them was irrelevant, since the plaintiff did not rely upon his having appeared to act or upon their supposing him to be acting as the defendants' agent. The plaintiffs made no claim upon any such ground. Their position, as well as that of the defendants, was well stated in the main charge. They maintained that it was fraudulently contrived that Vorce should purchase ostensibly for the old firm, which was irresponsible, but secretly and really for the defendants, that the purchase was so made, the sellers supposing they were treating with the old firm, whilst, in point of fact, the purchase was for the benefit of defendants, who received the goods and disposed of them for their own use. And this is the basis of the action, and I do not see how it can be made to turn upon an instruction by defendants to Vorce to abstain from making a purchase in their name on credit.

If correct in this, the judgment should be reversed and a new trial ordered, with costs.

The other Justices concurred: